# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| MICHAEL TIFFANY, individually and on behalf of similarly situated persons, | ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | NO. CIV-15-1190-HE |
| KO HUTS, INC.,[1] | ) ) | |
| Defendant. | ) | |

## ORDER

Plaintiff Michael Tiffany filed this action on behalf of himself and other delivery drivers for defendant KO Huts, Inc. ("KO Huts"), which operates Pizza Hut franchise stores in several states. He asserts claims under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201-219, and under the Oklahoma Minimum Wage Act ("OMWA"), 40 Okla. Stat. §§ 197.1-197.14, to recover unpaid minimum wages. Defendant KO Huts filed a motion to compel plaintiff to arbitrate his claims only on an individual basis.

Plaintiff responded by filing a motion to strike the motion to compel and by initiating an FLSA collective action arbitration. KO Huts then filed a motion seeking a preliminary injunction staying the arbitration pending a final judicial decision as to the "scope, validity and enforceability of the [parties'] arbitration agreement." Doc. #23, p. 1. This order disposes of the motions to strike and for preliminary injunction. The motion to compel will

---

[1]Plaintiff sued KO Huts, Inc. and Chisholm Enterprises, Inc. ("Chisholm"). In its motion to compel, Doc. #16, KO Huts explains that it previously was known as Chisholm before changing its name, effective January 1, 2013. Chisholm is not a separate entity from KO Huts and the court will proceed, as the parties have done, to refer solely to KO Huts as the defendant.

be addressed by separate order.

## Background

Plaintiff is a former employee of KO Huts, a Pizza Hut franchisee that operates Pizza Hut restaurants in Kansas and Oklahoma. Plaintiff worked as a delivery driver for KO Huts in Enid, Oklahoma from May 27 to July 20, 2015. It is undisputed that before plaintiff started working for KO Huts he signed an Agreement to Arbitrate ("Agreement"), which requires plaintiff to arbitrate his wages dispute. It is also undisputed that the Agreement includes a waiver of the right to arbitrate as part of any class or collective action. The dispute is who determines the validity of the waiver, the court or the arbitrator.[2]

Plaintiff filed this lawsuit in October 2015, seeking to pursue his FLSA claim as a collective action and his OMWA claim as a class action. Defendant answered and counterclaimed, seeking a declaratory judgment that, among other things, Tiffany was required to arbitrate his wage claims in an individual action and that the court, not the arbitrator, should determine issues relating to arbitrability.[3] Defendant also filed a motion to compel plaintiff to arbitrate his FLSA and OMWA claims on an individual basis. Plaintiff then filed a demand to arbitrate his FLSA claim with the American Arbitration Association,

---

[2]*As defendant points out, Doc. #55, p. 9 n.4, plaintiff does not oppose the merits of its motion to compel individual arbitration. At least in this action he offers no substantive reasons as to why the collective/class action prohibition is invalid, but instead challenges defendant's position that it is the court, rather than the arbitrator, who determines whether the waiver is enforceable. See Doc. #20.*

[3]*"An issue is arbitrable if it is subject to decision by arbitration or referable to an arbitrator or arbiter." Burlington N. & Santa Fe Ry. Co. v. Pub. Serv. Co. of Okla., 636 F.3d 562, 567 (10th Cir. 2010).*

submitting the case as a collective action, and defendant filed its motion for a preliminary injunction. Defendant seeks to enjoin plaintiff from arbitrating the "collective-action FLSA claim" until the court decides the "scope, validity and enforceability of the arbitration agreement." Doc. #23, p. 1. Plaintiff objects to an injunction and also contends defendant's motion to compel should be stricken, claiming it has refused to arbitrate.

Primary Jurisdiction

The court previously directed the parties to advise it of the effect, if any, of the Complaint and Notice of Hearing the National Labor Relations Board ("NLRB") filed, based on plaintiff's charge that defendant violated Section 7 of the NLRA by maintaining and enforcing the class and collective action waivers in the parties' arbitration agreement. The court's concern was whether the NLRB has primary jurisdiction over the dispute and whether this matter should be stayed pending resolution of the unfair labor practice charge.

"Under principles announced in San Diego Bldg. Trades Council v. Garmon, 359 U.S. 236, 79 S.Ct. 773, 3 L.Ed.2d 775 (1959), both state and federal courts generally lack original jurisdiction to determine disputes involving conduct actually or arguably prohibited or protected by the NLRA." United Ass'n of Journeymen & Apprentices of the Plumbing & Pipe Fitting Indus. v. Bechtel Power Corp., 834 F.2d 884, 886 (10th Cir.1988). However, this is not a situation in which the challenged conduct is even "arguably prohibited" by the NLRA. Hickey v. Brinker Int'l Payroll Co., L.P., 2014 WL 622883 (D. Colo. Feb. 18, 2014). As the Fifth Circuit noted in D.R. Horton, Inc. v. N.L.R.B., 737 F.3d 344, 362 (5th Cir. 2013), "[e]very . . . circuit[] to consider the issue has either suggested or expressly stated that

3

they would not defer to the NLRB's rationale,[4] and held arbitration agreements containing class waivers enforceable."[5] *See generally* Tamburello v. Comm-Tract Corp., 67 F.3d 973, 977 (1stCir.1995) ("A primary justification of the preemption doctrine is 'the need to avoid conflicting rules of substantive law in the labor relations area and the desirability of leaving the development of such rules to the administrative agency created by Congress for that purpose....'") (quoting Vaca v. Sipes, 386 U.S. 171, 180 (1967)).

As stated by one court, "[g]iven the recent morbidity of In re D.R. Horton, the outcome of plaintiffs' charge before the NLRB thus seems a foregone conclusion. Hickey, 2014 WL 622883 at *2. Therefore, because "it is clear or may fairly be assumed" that KO Huts, by requiring its employees to sign arbitration agreements with collective or class action waivers, did not commit unfair labor practices, the court concludes it does not have to "yield" jurisdiction and defer to the NLRB. Garmon, 359 U.S. at 244.[6]

Motion to Strike

---

[4]*The NLRB held* In re D.R. Horton,*357 N.L.R.B. No. 184 (Jan. 3, 2012),that the company violated the NLRA when it required its employees to sign arbitration agreements that prohibited them from pursuing claims in a collective or class action.*

[5]Walthour v. Chipio Windshield Repair, LLC*, 745 F.3d 1326 (11th Cir. 2014), cert. denied, 134 S. Ct. 2886 (2014);* Sutherland v. Ernst & Young LLP*, 726 F.3d 290 (2d Cir. 2013);* Owen v. Bristol Care, Inc.*, 702 F.3d 1050 (8th Cir. 2013).*

[6]*Exceptions also exist to the* Garmon *doctrine.* Cumpston v. Dyncorp Tech. Servs., Inc.*, 76 Fed. Appx. 861, 865 (10th Cir. 2003) (citing* Tamburello*, 67 F.3d at 977-78). "[F]ederal courts may decide labor questions that emerge as collateral issues in suits brought under statutes providing for independent federal remedies."* Tamburello*, 67 F.3d at 977. It is unnecessary to decide whether the waiver issue falls within an exception, as this is not a situation in which the doctrine even arguably applies.*

4

Another preliminary issue is whether defendant waived its right to compel arbitration by its conduct. The issue merits little discussion. Plaintiff claims defendant's motion to compel should be stricken, citing a portion of a sentence from a letter KO Huts sent the American Arbitration Association ("AAA"), in which it states: "KO Huts does not intend to submit payment, file an answer, or otherwise proceed with arbitration at this time." Doc. #19-5, p. 3.[7] It is clear, though, when the letter is read in its entirety and defendant's behavior is considered in light of the procedural history of this case, that KO Huts did not breach the arbitration agreement and is not "in default in proceeding with [the] arbitration." Pre-Paid Legal Servs., Inc. v. Cahill, 786 F.3d 1287, 1294 (10th Cir. 2015) (internal quotation marks omitted), *cert. denied*, 136 S. Ct. 373 (2015). Although it had been advised by the AAA Case Filing Specialist that it did not have to pay the initial case filing fee, KO Huts has paid the fee and complied with the directions of the Case Filing Specialist regarding the arbitration. Plaintiff's motion to strike is without merit and will be denied.

KO Hut's Motion for Preliminary Injunction

Defendant seeks an order enjoining plaintiff from proceeding with the arbitration until "the scope and enforceability of the Agreement to Arbitrate has been fully and finally litigated, with all appeals exhausted, in this litigation and in proceedings currently pending with the National Labor Relations Board." Doc. #24, pp. 1-2. Defendant claims that the four elements of a preliminary injunction are easily satisfied. They are: "(1) a substantial

---

[7]*Page references to briefs and exhibits are to the CM/ECF document and page number.*

likelihood of success on the merits; (2) irreparable injury will result if the injunction does not issue; (3) the threatened injury to the movant outweighs any damage the injunction may cause the opposing party; and (4) issuance of the injunction would not be adverse to the public interest." Kansas Judicial Watch v. Stout, 653 F.3d 1230, 1233 n.2 (10th Cir. 2011).

Defendant's ability to demonstrate that it is substantially likely to succeed on its claim that the court, rather than the arbitrator, determines the availability of classwide arbitration depends on the specific provisions of the parties' Agreement. "[A]rbitration is a matter of contract," and arbitration agreements must be enforced according to their terms. Nesbitt v. FCNH, Inc., 811 F.3d 371, 376 (10th Cir. 2016) (internal quotation marks omitted). The pertinent provisions of the Agreement follow.

> KO Huts, Inc. (KOHI), . . . and I agree to use binding arbitration, instead of going to court, for any claims, including any claims now in existence or that may exist in the future . . . that I may have against KOHI . . . . Without limitation, such claims include any concerning wages, expense reimbursement, . . . [and] compensation . . . . In any arbitration, the American Arbitration Association ("AAA") will administer the arbitration, the then prevailing employment dispute resolution rules of the American Arbitration Association will govern, except that (a) KOHI will pay the arbitrator's fees; (b) KOHI will pay the arbitration filing fee; and (c) as discussed below, the arbitration shall occur only as an individual action and not as a class, collective, representative, private attorney general action or consolidated action. The rules are available for review as www.adr.org or can be sent to you by the Home Office.
>
> KOHI and I agree that any and all claims subject to arbitration under this Agreement to Arbitrate may be instituted and arbitrated only in an individual capacity, and not on behalf of or as a part of any purported class, collective, representative private attorney general action, or consolidated action (collectively referred to in this Agreement to Arbitrate as a "Class Action"). Furthermore, KOHI and I agree that neither party can initiate a Class Action in court or in arbitration in order to pursue any claims that are subject to

arbitration under this Agreement to Arbitrate . . . .The waiver of Class Action claims and proceedings is an essential and material term of this Agreement to Arbitrate, and KOHI and I [Tiffany] agree that if it is determined that it is prohibited or invalid under applicable law, then this entire Agreement to Arbitrate is unenforceable.

All issues are for the arbitrator to decide, except that issues relating to arbitrability, the scope or enforceability of this Agreement to Arbitrate, or the validity, enforceability, and interpretation of its prohibitions of class and representative proceedings, shall be for a court of competent jurisdiction to decide.

Doc. #16-1, at 2.

Defendant claims it is clear from the Agreement's express terms that the court is to decide issues of arbitrability, including the validity and enforceability of the class action waiver. Plaintiff acknowledges that the Agreement does state "that a court must decide whether the claim will be arbitrated as a class and collective action." Doc. #34, pp. 1-2. However, he contends the Agreement also incorporates the AAA Employment Arbitration Rules and that constitutes clear and unmistakable evidence that the parties intend for the arbitrator to decide the waiver issue. Section 6(a) of the AAA rules state that "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement." Doc . #34-1, p. 3.[8]

---

[8]*The Arbitration Agreement specified that certain matters would not be governed by the AAA rules. Relying on the reference in the first paragraph of the Agreement to "as discussed below," defendant argues that the provision that issues relating to arbitrability were reserved for a court of competent jurisdiction to decide was excepted from the AAA rules, so there is no ambiguity in the Agreement. An intent to include the clause pertaining to arbitrability within the exception is not evident from the language used.*

If the Arbitration Agreement had not included an express provision to the contrary and, if the matter at issue – the class action waiver – did not present a "question of arbitrability," the court might well agree with plaintiff. However, the Agreement specified that the court, not the arbitrator was to decide "issues relating to arbitrability, the scope or enforceability of this Agreement to Arbitrate, or the validity, enforceability, and interpretation of its prohibitions of class and representative proceedings." The language is clear and the specific allocation of the authority to determine issues relating to arbitrability to the court controls over the general reference to the AAA rules.[9]

Even if the parties' Arbitration Agreement is internally inconsistent due to the incorporation of the AAA rules, *see* Nesbitt, 811 F.3d at 380, the ambiguity is resolved by application of the presumption that the parties did not agree to "submit the arbitrability question itself to arbitration (i.e., to arbitrate arbitrability)." Burlington N. & Santa Fe Ry. Co. v. Pub. Serv. Co. of Okla., 636 F.3d 562, 568 (10th Cir. 2010). In other words, they did not agree to have the arbitrator determine the validity of the class action waiver. That is because "[t]he question whether parties have submitted a particular dispute to arbitration, *i.e.*, the 'question of arbitrability,' is 'an issue for judicial determination [u]nless the parties

---

[9]*Plaintiff's position was recently rejected by the Third Circuit in* Chesapeake Appalachia, LLC v. Scout Petroleum, LLC, *809 F.3d 746, 753 (3d Cir. 2016), petition for cert. filed, No. 15-1242 (April 6, 2016). There the court held that an arbitration agreement that incorporated the commercial AAA rules did not clearly and unmistakably delegate the question of class arbitrability to the arbitrator. Contrary to plaintiff's assertion, the fact that the AAA rules that were incorporated by reference in* Chesapeake Appalachia *were commercial, rather than employment, as here, does not affect the analysis.*

8

clearly and unmistakably provide otherwise.'" [10] Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79, 83 (2002) (quoting AT & T Technologies, Inc. v. Communications Workers, 475 U.S. 643, 649 (1986)); *accord* Chesapeake Appalachia, LLC v. Scout Petroleum, LLC, 809 F.3d 746, 753 (3d Cir. 2016) ("The burden of overcoming the presumption is onerous, as it requires express contractual language unambiguously delegating the question of arbitrability to the arbitrator."), *petition for cert. filed,* No. 15-1242 (April 6, 2016) (quoting Opalinski v. Robert Half International Inc., 761 F.3d 326, 335 (3d Cir.2014), *cert. denied*, 135 S.Ct. 1530, (2015)).[11]

"Questions of arbitrability" are limited, though, to so-called gateway or substantive

---

[10]*Plaintiff is correct that "[c]ourts usually apply ordinary state law principles governing contract formation to decide whether the parties agree to arbitrate a certain matter." Chesapeake Appalachia, 809 F.3d at 760-61. He is not correct, though, that because defendant drafted the Agreement, that if it includes conflicting provisions regarding whether a court or an arbitrator determines issues of arbitrability,"Oklahoma law dictates that the arbitrator will decide such issues." Doc. #20, pp. 6-7. "[T]he general rule that courts should apply ordinary state law principles is subject to the following qualification: 'Courts should not assume that the parties agreed to arbitrate arbitrability unless there is "clea[r] and unmistakabl[e]" evidence that they did so.'" Chesapeake Appalachia, 809 F.3d at 761 (quoting First Options of Chi., Inc. v. Kaplan, 514 U.S. 938, 944 (1994)).*

[11]*As explained by the Third Circuit in Chesapeake Appalachia, "[t]he availability of class arbitration implicates two questions or inquiries: (1) the 'who decides' inquiry; and (2) the 'clause construction' inquiry." Chesapeake Appalachia, 809 F.3d at 753. The 'who decides' inquiry consists of a twofold analysis. The court*
> *decide[s] whether the availability of classwide arbitration is a "question of arbitrability." If yes, it is presumed that the issue is for judicial determination unless the parties clearly and unmistakably provide otherwise. If the availability of classwide arbitration is not a 'question of arbitrability, it is presumptively for the arbitrator to resolve. In the "clause construction" inquiry, the court or the arbitrator then decides whether the parties' arbitration agreement permits class arbitration.*
*Id. (internal citations and quotation marks omitted).*

9

disputes, such as "whether the parties are bound by a given arbitration clause" or "whether an arbitration clause in a concededly binding contract applies to a particular type of controversy." *Id.* at 84. "'Procedural' questions which grow out of the dispute and bear on its final disposition," are not "questions of arbitrability" and "are presumptively <u>not</u> for the judge, but for an arbitrator, to decide." *Id.* (internal quotation marks omitted). "[T]he presumption is that the arbitrator should decide 'allegation[s] of waiver, delay, or a like defense to arbitrability.'" *Id.* (quoting <u>Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.</u>, 460 U.S. 1, 24-25 (1983)); *see* <u>Dell Webb Communities, Inc. v. Carlson</u>, ___ F.3d ___, 2016 WL 1178829, at *9 (4th Cir. Mar. 28, 2016) (" Procedural questions arise once the obligation to arbitrate a matter is established, and may include such issues as the application of statutes of limitations, notice requirements, laches, and estoppel.").

Although the Tenth Circuit has not addressed the issue, the Third, Fourth and Sixth Circuits have held that "the availability of classwide arbitration is a substantive 'question of arbitrability' to be decided by a court absent clear agreement otherwise." <u>Chesapeake Appalachia, LLC v. Scout Petroleum, LLC</u>, 809 F.3d 746, 753 (3d Cir. 2016), *petition for cert. filed,* No. 15-1242 (April 6, 2016) (internal quotation marks omitted); <u>Dell Webb Communities</u>, 2016 WL 1178829, at *8-9; <u>Reed Elsevier, Inc. v. Crockett</u>, 734 F.3d 594, 599 (6th Cir.2013), *cert. denied*, 134 S.Ct. 2291 (2014).[12] In making that decision, the Sixth

---

[12]*In <u>Green Tree Financial Corp. v. Bazzle</u>, 539 U.S. 444, 452 (2003), four justices concluded that the class arbitration question is not a "gateway" issue to be decided by a court, but rather a procedural matter for the arbitrator. The Court later "pointedly observed that 'only the plurality' in <u>Bazzle</u> decided whether classwide arbitrability is a gateway question," <u>Reed Elsevier</u>, 734 F.3d at 598 (quoting <u>Stolt–Nielsen S.A. v. AnimalFeeds Int'l Corp.,</u> 559 U.S. 662, 680 (2010)), and*

Circuit reasoned that

> [g]ateway questions are fundamental to the manner in which the parties will resolve their dispute—whereas subsidiary questions, by comparison, concern details. And whether the parties arbitrate one claim or 1,000 in a single proceeding is no mere detail. Unlike the question whether, say, one party to an arbitration agreement has waived his claim against the other—which of course is a subsidiary question—the question whether the parties agreed to classwide arbitration is vastly more consequential than even the gateway question whether they agreed to arbitrate bilaterally. An incorrect answer in favor of classwide arbitration would forc[e] parties to arbitrate not merely a single matter that they may well not have agreed to arbitrate but thousands of them.

*Id.* at 598-99 (internal citations and quotation marks omitted). The court agrees with this analysis and concludes the question of classwide arbitration is a gateway issue. *See* Dell Webb Communities, 2016 WL 1178829, at *6 ("The [Supreme] Court found that 'class-action arbitration changes the nature of arbitration to such a degree that it cannot be presumed the parties consented to it by simply agreeing to submit their disputes to an arbitrator.'") (quoting Stolt–Nielsen S.A. v. AnimalFeeds Int'l Corp., 559 U.S. 662, 685 (2010)); Reed Elsevier, 734 F.3d at 598 ("Gateway questions are fundamental to the manner in which the parties will resolve their dispute—whereas subsidiary questions, by comparison, concern details. And whether the parties arbitrate one claim or 1,000 in a single proceeding is no mere detail.").

---

*remarked in* Oxford Health Plans LLC v. Sutter, *133 S. Ct. 2064, 2068 n.2 (2013), that "*Stolt–Nielsen *made clear that this Court has not yet decided whether the availability of class arbitration is a question of arbitrability." According to the Sixth Circuit, "the Supreme Court has given every indication, short of an outright holding, that classwide arbitrability is a gateway question rather than a subsidiary one."* Reed Elsevier, *734 F.3d at 598. It noted that the Court had "characterized the differences between bilateral and classwide arbitration as 'fundamental.'" Id. (quoting* Stolt–Nielsen, *559 U.S. at 686).*

Even assuming that the Arbitration Agreement is ambiguous because it incorporated the AAA rules, that does not result in the necessary clear showing. As a result, the question of the validity of the class action waiver is for the court, not the arbitrator, to decide. The court concludes defendant has met its burden of showing a substantial likelihood of prevailing on its claim that the court should determine issues of arbitrability, including the validity/enforceability of the class action waiver.

With respect to the second element, defendant contends it has demonstrated the requisite irreparable injury as it could be "forced to arbitrate in the absence of a duty to arbitrate." Doc. #24, p. 12. Plaintiff responds that litigation expense alone does not amount to irreparable harm. In similar circumstances the Eighth Circuit concluded that the trial court properly enjoined a party from pursuing arbitration until it determined arbitrability. McLaughlin Gormley King Co. v. Terminix Int'l Co., L.P., 105 F.3d 1192, 1194 (8th Cir. 1997). The parties in McLaughlin, McLaughlin Gormley King Co. ("MGK") and Terminix International Company ("Terminix") had agreed to arbitrate any controversy arising out of their agreement for the sale/purchase of an insecticide. Terminix had been sued in a personal injury action and MGK had refused to defend or indemnify it for injuries allegedly due to exposure to the insecticide. After it settled the lawsuit, Terminix filed a demand to arbitrate its claim against MGK for indemnification and defense costs. MGK refused to arbitrate and filed a declaratory judgment action, contending the dispute was not arbitrable. It also moved for a preliminary injunction prohibiting Terminix from asserting its demand to arbitrate. The district court granted the preliminary injunction, concluding it needed further discovery on

12

the issue of arbitrability and Terminix, which argued that the arbitrator, not the court, initially had to decide arbitrability, appealed. Terminix claimed the district court had abused its discretion when it preliminarily enjoined it from pursuing arbitration, in particular because "the monetary cost MGK would incur in arbitration [was] not legally recognized irreparable harm." *Id*. The Eighth Circuit disagreed, reasoning:

> If a court has concluded that a dispute is non-arbitrable, prior cases uniformly hold that the party urging arbitration may be enjoined from pursuing what would now be a futile arbitration, even if the threatened irreparable injury to the other party is only the cost of defending the arbitration and having the court set aside any unfavorable award. *See* PaineWebber Inc. v. Hartmann, 921 F.2d 507, 514 (3rd Cir.1990); Nordin, 897 F.2d at 343; U.S. v. Pool & Canfield, Inc., 778 F.Supp. 1088, 1092 (W.D.Mo.1991). If that is so, then the order the court issued here, briefly freezing the parties' dispute resolution activities until it determines arbitrability, is surely appropriate.

*Id.* Following McLaughlin, the court concludes KO Huts will has satisfied the second of the preliminary injunction factors.

As for the third factor, the court concludes that the equities tip in defendant's favor. While plaintiff has an interest in the expeditious and inexpensive resolution of his claims through arbitration, defendant has the countervailing interest of not being compelled to arbitrate class action claims that were not within the scope of its arbitration agreement. *See* Oxford Health Plans LLC v. Sutter, 133 S. Ct. 2064, 2067 (2013) (noting that in the absence of a contractual basis for concluding that a party had agreed to submit to class arbitration, it could not be compelled under the FAA to submit to class proceedings). Plaintiff will be allowed to arbitrate his claims, there simply will be delay in the process. The court also notes that it was plaintiff, not defendant, who filed this lawsuit.

The public interest analysis tracks that of the balance of the equities – while there is a strong public interest favoring arbitration, that is balanced by the equally important interest that " arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." AT & T Techs., 475 U.S. at 648 (internal quotations marks omitted). Imposing a brief delay will serve the public interest by minimizing the risk that KO Huts will be compelled to arbitrate a collective action it did not agree to arbitrate.

As defendant has shown a substantial likelihood that it will prevail on the merits, and that the other elements weigh in favor of granting it injunctive relief, its motion for a preliminary injunction will be granted. However, the relief granted will be more limited than that sought. The parties will be enjoined from further pursuing arbitration until the court has resolved the gateway arbitrability questions.

Conclusion

Plaintiff's motion to strike [Doc. #19] is **DENIED**.[13] Defendant's motion for a preliminary injunction [Doc. #23] is **GRANTED** as follows.

**IT IS ORDERED** that the parties are enjoined from further pursuing arbitration until the court decides the gateway arbitrability issues or otherwise modifies the injunction.

**IT IS FURTHER ORDERED** that defendant post bond within **three (3) days** in the

---

[13]*The court has considered the supplemental authorities submitted by the parties and grants the following motions: Doc. Nos. 53, 58, 59, 60, 61, 62, 63, 65. Any pleadings or notices requested to be filed, which were attached to the motions, are deemed filed.*

amount of $5,000 to pay the costs and damages which plaintiff may sustain if found to have been wrongfully enjoined.  See Fed.R.Civ.P. 65(c).

**IT IS SO ORDERED**.

Dated this 13th day of April, 2016.

JOE HEATON
CHIEF U.S. DISTRICT JUDGE